1
2
3
4
5

Mark Aussieker
8830 Olive Ranch Lane
Fair Oaks, CA 95628
Phone: 916-705-8006
aussieker1@gmail.com

*in pro per*

**FILED**

MAR 0 5 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

6
7

UNITED STATES DISTRICT COURT

8
9

EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14

Mark Aussieker

                Plaintiff,

        v.

SKYLINE ENERGY SAVERS, INC and
TMI 4 U COMM LLC,  Defendant(s)

No. 2:19 c v 0708  TLN DB

**SECOND AMENDED COMPLAINT**

**COMPLAINT FOR DAMAGES**
Trial by Jury not requested

15
16

Plaintiff MARK AUSSIEKER ("Plaintiff"), on behalf of himself alleges as follows:

17
18
19
20
21
22

        1.        Plaintiff Mark Aussieker  ("Plaintiff" or "Mr. Aussieker") brings this action to

enforce the consumer-privacy provisions of the Telephone Consumer Protection Act "TCPA",

47 U.S.C. § 227,  a federal statute enacted in 1991 in response to widespread public outrage

about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin.*

*Servs., LLC,* 132 S. Ct. 740, 745 (2012).

23
24
25
26

        2.        Upon information and belief, Defendants have placed telemarketing calls

to a telephone number Mr. Aussieker had registered on the national Do Not Call Registry

without consent. As a result, Defendants are liable for those calls.

27
28

        3.        Defendants may have hired TMI communications to provide the "heavy

lifting" for locating, qualifying, coordinating potential customers.   DEFENDANT is

1

1   liable for the vendors actions per *Charvat v. Echostar* and *United States v. Dish Network*

2   matters (FCC-13-54A1 (Dec. Ruling)).

3       4.      In the 1995 FCC Memorandum Opinion and Order, the FCC stated that;

4   "Our rules generally establish that the party on whose behalf a solicitation is made bears

5   ultimate responsibility for any violations.  Calls placed by an agent of the telemarketer are

6

7   treated as if the telemarketer itself placed the call."

8       5.      The FCC stated that; a seller "may be held vicariously liable under federal

9   common law principles of agency for violations of either section 227(b) or section 227(c)

10  that are committed by third-party telemarketers".  The FCC has stated that; "allowing the

11  seller to avoid potential liability by outsourcing its telemarketing activities to

12
    unsupervised third parties would leave consumers in many cases without an effective
13
14  remedy for telemarketing intrusions"

15

16                                  **PARTIES**

17      6.      Plaintiff  Mark Aussieker is an individual and a resident of the state of California.

18      7.      Defendant SKYLINE ENERGY SAVERS, INC. is an individual and a

19  California  Corporation .  It is a "person" as defined by 47 US.C. § 153 (39). Will be referred
20
21  to as "SKYLINE".

22      8.      Defendant JOSEPH MARTIN. is an individual and a person" as defined by 47

23  US.C. § 153 (39). He will be referred to as "JOSEPH MARTIN"

24      9.      Defendant TMI 4 U COMM LLC is an individual and a Califorinia

25  Corporation .  It is a "person" as defined by 47 US.C. § 153 (39). Will be referred to as
26
    "TMI".
27
28      10.      The Court has federal question subject matter jurisdiction over these

                                        2

TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.     Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because the Plaintiff is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this lawsuit.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

13.     This Court has personal jurisdiction over the parties because Defendants systematically and continually have conducted business in the State of California. Likewise, Plaintiff's rights were violated in the State of California and his claims arose out of his contact with Defendants from California.

## TCPA Background

14.     TCPA Background In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

## THE TCPA PROHIBITS TELEMARKETING CALLS TO NUMBERS LISTED ON THE DO NOT CALL REGISTRY, UNLESS THE CALLER HAS THE RECIPIENT'S SIGNED, WRITTEN CONSENT.

15.     The national Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is

3

1    removed by the database administrator." *Id.*

2       16.    The TCPA and implementing regulations prohibit the initiation of telephone

3 solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47

4 C.F.R. § 64.1200(c)(2).

5

6       17.    A person whose number is on the Registry, and who has received more than

7 one telephone call within any twelve-month period by or on behalf of the same entity in

8 violation of the TCPA, can sue the violator and seek statutory damages.   47 U.S.C. §

9 227(c)(5).

10       18.    The regulations exempt from liability a caller who has obtained the

11 subscriber's signed, written agreement to receive telephone solicitations from the caller. 47

12 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which

13 the calls may be placed. Id.

14

15       19.    Any person whose receives any phone in violation 47 U.S.C. § 227(b)(1) (A)
can sue the violator and seek statutory damages. 47 U.S.C §227(b)(3)(B) This is commonly
16 refered to as the auto dialer statue or ATDS.

17   47 U.S.C. § 227(b)(1) (A) to make any call (other than a call made for emergency purposes or

18 made with the prior express consent of the called party) using any automatic telephone dialing

19 system or an artificial or prerecorded voice— (iii) to any telephone number assigned to a

20 paging service, cellular telephone service, specialized mobile radio service, or other radio

21 common carrier service, or any service for which the called party is charged for the call,

22

23 unless such call is made solely to collect a debt   owed to or guaranteed by the federal

24 government."

25

26       20.    Automatic Telephone Dialing System, which the statute defines as

27 "equipment which has the capacity—(A) to store or produce telephone numbers to be called,

28

1   using a random or sequential number generator; and (B) to dial such numbers." 47 USC

2   227(a)(1). Notwithstanding this limited definition, the Ninth Circuit ruled in Marks v.

3   Crunch San Diego, LLC that an ATDS means more than what the statute says. The question

4   is whether, in order to be an ATDS, a device must dial numbers generated by a random or

5   sequential number generator or if a device can be an ATDS if it merely dials numbers from a

6   stored list."

7

8       21.     The Court answered in the affirmative merely that if the dialer dials numbers

9   from a stored list, it is considered an ATDS. Marks decision is now the law of the land in the

10   9th circuit as of February 19th after the parties settled.

11

12      22.     All a plaintiff needs to show is that a call or text message was made using an

13   auto dialer to a number assigned to cellular service, or that the calling party was charged for

14   the call. In this case, both plaintiffs received calls on thier cellular phones where they were

15   both charged for the call.

16                                **GROWING PROBLEM**

17      23.     When Congress enacted the TCPA in 1991, it found that telemarketers called

18   more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

19

20      24.     By 2003, telemarketers were calling 104 million Americans every day, abetted by

21   the proliferation of new and more powerful autodialing technology. In re Rules and Regulations

22   Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

23      25.     Unfortunately, the problems Congress identified when it enacted the TCPA have

24   grown only worse in recent years.

25      26.     Industry data shows that the number of robocalls made each month increased

26   from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three

27   years.

28

27.     According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited April 9, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. See id.

28.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited April 10, 2019).

29.     Starting in March 2017, Plaintiff began to get bombarded with unsolicited calls regarding solar installations. After receiving a call on March 13th,2017, Plaintiff googled "Home solar solutions" after unsuccessfully searching the state license database.

30.     Others posted youtube videos about the same types of calls[1].

## Factual Allegations

31.     Plaintiff  MARK AUSSIEKER's phone number ending in 8006 was added to the Do Not Call list in February 2003.

32.     Plaintiff has maintained the same cell phone ending in 8006 continuously since 2002.

33.     Plaintiff does not have a landline and primarily uses his cell phone. His number is a residential telephone number.  He uses his phone to call and text friends and families.

34.     Plaintiff  has never visited SKYLINE's storefront, called or requested any information from them.

35.     PLAINTIFF received telemarketing calls from the defendants for the sole

---

[1] https://www.youtube.com/watch?v=QcdXf26R0zg

6

1   purpose to promote residential services.

2       36.    Plaintiff alleges 6 calls, two on March 13th and April 27th, (707) 346-2157 [2]  and

3   two on June 20th, 2017 from an unknown number.

4       37.    The plaintiff has incontrovertible proof is two appointments with Skyline

5

6       38.    PLAINTIFF does not have a "landline" and uses his cell phones.  There is an

7   "office phone" in the office.

8       39.    SKYLINE holds himself out to be in the business of Solar panel installations [3]

9   and has hired vendors to locate potential customers.

10      40.    JOSEPH MARTIN holds himself out to be in the business of selling home

11  improvements which include solar panel installations [4]

12

13      41.    License history shows that MARTIN did not have an employer during the calls.

14      42.    On April 27th[st], 2017 SKYLINE or his agents or vendors undertook the

15  misguided effort to solicit Mark AUSSIEKER on his  cellular phone.

16      43.    During and/or in regard to the 1st Call, Defendant knowingly and/or willfully:

17      ○   Called AUSSIEKER's cellular telephone without Plaintiff's prior express consent

18          or approval

19

20      ○   used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1)

21          to place its call to Plaintiff.  Without the benefit of discovery, plaintiff infers this

22          from DEFENDANTS admitted use of a "SOUND BOARD" and youtube videos

23          promoting the calling capabilities. In one video, its obvious that a computer is used

24          to make all call calls.  DEFENDANTS agent placed instructions on how to login to

25          dialing platform, indicating.

26

27  [2] https://www.everycaller.com/phone-number/1-707-346-2157/
    [3]Https://www2.cslb.ca.gov/OnlineServices/CheckLicenseII/LicenseDetail.aspx?LicNum=549017https://businesssear
28  ch.sos.ca.gov/Document/RetrievePDF?Id=201412610198-25653543
    [4]https://cslb.ca.gov/OnlineServices/CheckLicenseII/HISDetail.aspx?HISLicNum=45717&HISLmfPre=SP

1    dialing platform, indicating.

2        o   Defendant Failed to check Plaintiffs name and telephone number(s) on its Do-Not-

3            Call List

4        o   Played a pre-recorded message about energy saving benefits of using solar- .

5
            Without the benefit of discovery, plaintiff defendant played a pre-recorded
6
7            message  from defendants admitted use of a "SOUND BOARD"- which by

8            definition is a pre-recorded message stored.

9        o   PLAINTIFF feigned interest and answered qualifying questions regarding the age

10           of roof, sun exposure, credit and power consumption.

11

12   44.    After SKYLINE received the "appointment" they contacted the PLAINTIFF and

13   revealed its identity to PLAINTIFF.

14   45.    PLAINTIFF accused SKYLINE of violating  the TCPA.  SKYLINE blamed its

15   vendor TMI.

16
     46.    TMI admitted to calling Plaintiff on April 27th[st], 2017, using an avatar[5] style
17
18   system.

19   47.    Plaintiff researched TMI and found his website that boasted its ability to make

20   between 3-5 thousand calls a seat. TMI also had a policy and practice of requiring its contractors

21   to use its software,  its VOIP provider, its script and list of people to call.

22
     48.    TMI website also showed how SKYLINE had access to call recordings and that
23
24   they could listen to the "call open" and "call close"

25   49.    Cathie Martin, on behalf of SKYLINE revealed that its vendor recorded all of the

26   calls in an email to plaintiff on 5/15/2017.

27

28   ──────────────
     [5] https://www.youtube.com/watch?v=pN3phKJnmqw

                                      8

50.    Solicit is defined as to "speak to residents uninvited for a "commercial purpose"

Canvassing is distributing information to a person willing to directly receive such information.

51.    TMI took an  affirmative step to becoming a solicitor instead of a canvasser by

inquiring about PLAINTIFFS power consumption, roof age, ownership status, tree locations.

52.    Defendant TMI solicited Plaintiff to purchase a solar system. For a person to

solicit a party, they must first register as a "Home improvement sales person.[6]"

53.    On June 20th, 2017 at 12:08pm  JOSEPH MARTIN or its agent or vendor

undertook the misguided effort to solicit Mark AUSSIEKER on his  cellular phone.

54.    During and/or in regard to the 2nd Call, Defendant knowingly and/or willfully:

○    Called AUSSIEKER's cellular telephone without Plaintiff's prior express consent
    or approval

○    used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1)
    to place its call to Plaintiff.  Defendant Failed to check Plaintiffs name and
    telephone number(s) on its Do-Not-Call List

○    Played a pre-recorded message about being able to lower his power  bill with a
    solar system- .  The pre-recorded message is indicative of the use of an auto
    dialer.

○    Plaintiff attempted to speak to a caller but the call was disconnected..

○    The caller id was manipulated to show unknown.

55.    On June 20th, 2017 JOSEPH MARTIN or its agent or vendor undertook the

misguided effort to immediately call back  Mark AUSSIEKER on his cellular phone right after

the previous call disconnected. (as detailed in paragraph 52)

---

[6] http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=BPC&sectionNum=7152.

56.     During and/or in regard to the 3rd Call, Defendant knowingly and/or willfully:

- o  Called AUSSIEKER's cellular telephone without Plaintiff's prior express consent or approval

- o  used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to place its call to Plaintiff.  Defendant Failed to check Plaintiffs name and telephone number(s) on its Do-Not-Call List

- o  Played a pre-recorded message about being able to lower his power  bill with a solar system- .  The pre-recorded message is indicative of  the use of an auto dialer.

- o  Plaintiff feigned interest with a caller and an appointment was scheduled at 6116 Illinois ave, Orangevale, CA on June 22nd, 2017.

57.     On June 22nd, 2017- an individual representing arrived and met with Plaintiff. The individual referred to himself as "JOSEPH MARTIN"  with and was driving a grey vehicle which PLAINTIFF photographed the license plate of the vehicle and read 6WTX344.  EXIF information shows the GPS location of the photograph 38.6779146,-121.235082 .

58.     PLAINTIFF obtained records from the DMV which showed the owner of the vehicle to be a FTB SUSPENDED entity called Martin Labor, LLC.  The sole owner is Joe Martin. Mr. Martin is not related to Cathie Martin of Skyline Energy.  Mr. Martin is a licensed home improvement sales person.

59.     Cathie Martin informed Plaintiff on 11/19/2019 that Joe Martin was an independent contractor with his own corporation.  Mr. Martin was not listed as an authorized sales person for SKYLINE during the time of the 2nd and 3rd call.

60.     Plaintiff sent a demand letter to Joe Martin which was ignored.

61.     PLAINTIFF has a concrete injury being the receipt of such phone calls that Congress intended to remedy through passage of the TCPA.

62.     Plaintiff is self-interested and has been recruited by the reward congress has offered to them. See 47 U.S.C. § 227(b)(3), (c)(5) (providing for recovery of $1500 per violation in case brought by consumer)

63.     Mr. Aussieker's concrete injury as it relates to the *Spokeo* decision is loss of productivity for answering the call, lost work gloves by removing them to answer the phone, could not work while on the phone, the nuisance of receiving a telephone call and having to wonder if the caller is a real person, defendants bothering him with unrequested solicitations, nuisance of having to use google to find out who called since the company name and caller id were faked..

CAUSES OF ACTION

**COUNT 1**

**Violation of the Telephone Consumer Protection Act, 47 U.S.C.**

**§227(b)(1)(A)(iii)** – Auto Dialer

63. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

64. Defendant's own conduct (b) by the fact that others made those calls on its behalf by placing a Call to Plaintiff's cell phone using an automated dialing system, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227**(b)(1)(A)(iii)** and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation. In the alternative, Defendant violated the TCPA by the fact that it authorized and employed agents to make such calls on its behalf.

65. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b),

11

Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every

violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT 2

### Violation of the Telephone Consumer Protection Act, 47 U.S.C.

### §227(b)(1)(A)(iii) – Pre recorded message

66. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

67. Defendant's own conduct (b) by the fact that others made those calls on its behalf by

placing a Call to Plaintiff's cell phone and playing a pre-recorded message, violated 47

C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227(b)(1)(A)(iii) and, therefore, Plaintiff is entitled

to an award of statutory damages in the minimum amount of $500 for this violation. In the

alternative, Defendant violated the TCPA by the fact that it authorized and employed agents

to make such calls on its behalf.

68. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b),

Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every

violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT 3

### Violation of the Telephone Consumer Protection Act, 47 U.S.C.

### §227(c)(5) –DNC Violation

69. Defendant placed multiple telemarketing calls to the Plaintiff.

70. Defendant did so despite the fact that the Plaintiff previously had requested them to

12

1    stop.

2    71.  Defendant did so despite not training  for the individuals involved in the telemarketing

3    on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[7]

4

5    72.  Defendant did so despite not recording or honoring "do not call" requests.

6    73.  Accordingly, Plaintiff is entitled to an award of $500 in statutory damages for each

7    violative telephone call pursuant to 47 U.S.C. § 227(c)(5).

8

9

10                                              **COUNT 5**

11   **Unlawful Recording and Intercepting of Communications against DEFENDANT TMI**

12                        **(Violation of California Penal Code § 632.7)**

13

14

15   63.  Plaintiff incorporates each allegation set forth above as if fully set forth herein and

16        further alleges as follows.

17   64.  Plaintiff participated in calls that he received while within the State of California and

18   that originated by and through defendants call centers. Plaintiff used a cellular telephone to

19   engage in those conversations. Plaintiff is informed and believes and on that ground alleges

20   that, at all relevant times

21

22   65.  Defendants and their vendor, had a policy and practice of using hardware and/or

23   software that enabled them to surreptitiously record and/or monitor conversations with

24   Plaintiff who used cellular or cordless telephones to receive calls from defendant.

25   66.  Defendants and their vendor,  had and followed a policy and practice of not disclosing

26

27   _____

28   [17] *See id*  at 425 (codifying a June 26, 2003 FCC order).

to Plaintiff that their cellular calls were recorded and/or monitored, Defendants and their vendor, did not obtain, and could not have obtained, express or implied advance consent to the recording or monitoring of those conversations. As a result, plaintiff had an objectively reasonable expectation that their calls were not being recorded and/or monitored. That expectation and its objective reasonableness arise, in part, from the objective offensiveness of surreptitiously recording people's conversations, the absence of even a simple pre-recorded message as short as four simple words – "calls may be recorded" – and the ease with which such a message could have been put in place. As the California Supreme Court has stated, "in light of the circumstance that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls." (See Kearney v. Salomon Smith Barney (2006) 39 Cal. 4th 95.)

67.  Defendants' conduct as described above violated California Penal Code § 632.7(a). Under Penal Code § 637.2, Plaintiff are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.

68. JOSEPH MARTIN

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against JOSEPH MARTIN and TMI COMM , severally for the following:

    1.    Injunctive relief prohibiting such violations of the TCPA by Defendants

2.     Costs of this suit

3.     For an order finding the defendant knowingly and willfully violated TCPA

4.     damages of $500.00 for each call that violates Counts 1 or 2 see 47 U.S.C. §

227(b)(3) plus plus threefold damages for any intentional or willful or knowing

violation of 47 U.S.C. § 227(b)(3)

5.     damages of $500.00 for each such violation of Counts 3 see 47 U.S.C.

§227(c)(5). plus plus threefold damages for any intentional or willful or knowing

violation of 47 U.S.C. §227(c)(5).

6.     Leave to amend this Complaint to name additional DOESs as they are identified

and to conform to the evidence presented at trial

Respectfully Submitted this 3rd Day of March, 2020.

Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 3rd Day of March, 2020

Signature of Plaintiff

_____

Printed Name of Plaintiff _Mark Aussieker_____

Date of signing: 3rd Day of March, 2020